We thank you for being here, prepared to argue this very interesting case. Could we please call the case? 15-3163, Peoples v. Galewicz. Would counsel presenting argument please approach? If you could introduce yourselves and spell your last name for the record. Andrew Gable, G-A-B-L-E, on behalf of the petitioner, Galewicz. Good morning, your honors. Assistant State's Attorney Alan Spellberg, S-P-E-L-L-B-E-R-G, on behalf of the people. Good morning, both of you. We are typically allotting about 14 minutes a side. We tend to be a bit lenient with that. Mr. Gable, I assume you'd like to reserve some time? I'd like to reserve five minutes, please. Absolutely. Thank you very much, guys. And Mr. Gable, whenever you're ready. May it please the Court. Peter Wiggins was found guilty of two counts of aggravated unlawful use of a weapon based on a lack of a FOIA card. At the time, he had a permit from a federal military base in Texas. He was a resident of Texas. He had no prior felonies and no other disqualifications for being able to possess a firearm or to obtain a FOIA card. Was he permitted to possess a firearm on his person outside of his car in Texas? In Texas, I would submit yes. Why is that? What authority is that? That Texas does not require any kind of registration or license to have a firearm. Outside of the car? Outside of one's home or car? That is my understanding. What about if it's concealed, though? I thought you had to get a license to have a concealed weapon. They do have a registration for a concealed carry in Texas. Right. So if he were carried in a concealed manner in Texas, then he would likely have to have a concealed carry permit in Texas. Well, wasn't it concealed when he was inside the bar? I believe the trial testimony was a little bit unclear about that. But he did go in the bar. There was some evidence that he went inside the bar, but there was no witness that ever said they saw the gun inside the bar. I believe the witness saw a brown handle in his waistband outside the bar. Wasn't that concealed outside of the car? If the handle was sticking out, possibly it would not be concealed. However, in this case, he was never charged with possessing a concealed firearm. He was just charged with carrying a firearm without a FOIA card. I don't know that you're making the point that he had permission to do it in Texas, and that's what I'm questioning you on. Did he have permission under Texas law to possess a concealed weapon outside of his car? I don't believe he had a concealed carry from Texas. However, he had permission to possess or own a firearm in Texas. Was there testimony that he's kind of displayed it to that? I can't pronounce his name, but his first name was Noel. I believe the testimony was that he was walking, and he moved his jacket or coat, and he saw a brown handle. But I don't believe there's any testimony he brandished it, pointed it, or threatened anyone. He wasn't charged with anything along those lines. There was evidence presented at trial for Mr. Wiggins' testimony that he believed that Texas had issued that federal permit because it came from the state of Texas. He also testified that that permit allowed him to carry that firearm off the base in Texas. He testified that the federal military permit allowed him to carry the gun off the base? I thought he testified the opposite of that. No, I believe he testified that he was pretty sure the state of Texas had issued the permit because the base was located in Texas. And I believe he also testified that that permit allowed him to carry the firearm on and off the base. But didn't he acknowledge on cross that that certificate did not authorize him to carry the weapon wherever he went? I believe he acknowledged that on its face, the exhibit, it doesn't say you can carry this wherever you want. The permit also doesn't say this is limited to the base or limited to Texas. And I think most permits of this nature wouldn't say on them this allows you to carry this gun wherever in the world that you want. Was any evidence put into the record by the defense that, in fact, he was able to carry a gun by virtue of that military permit off the military base? It was just through Mr. Wiggins' testimony. No one from Texas or from the base testified. Is that really then sufficient evidence to establish what significance or what this permit actually allows? I would say it is some evidence for that that the state never rebutted. And the state did present public records from Illinois that he has no flight guard and from Texas that he had a driver's license and was a resident from Texas. So I believe it would be on the state then to rebut any of that testimony that that permit doesn't allow him to carry it off the base in Texas or carry it out of the state. Are we conflating Texas and Fort Bliss? They're two different things, right? They are two entities. I would submit that that permit satisfies the FOID requirement. Even though it's from a federal base, it's not the state of Texas. But under the FOID exception, it does recognize FOID issued from other states. We can take notice of other states' statutes, is that correct? Yes. So can we look at that and make a determination as to whether or not his carry outside the car was legal? Yes, I believe. However, no statutes were introduced at trial. And I think one of the issues here is Texas, I believe both sides agree, does not have any regulations about possessing or owning any kind of firearm. There's no registrations, no license. So it's hard to find a statute that says. Well, they have a Motorist Protection Act. And that act says you can take a gun from your house into your car. And you don't have to have any type of carry permit. But there's some restrictions. You can't be involved in criminal activity, which is one. In this case, had the defendant taken, been in Texas, and stepped outside of his vehicle with that gun, wouldn't he be in violation of Texas statute there since he had his gun out without a permit? Your Honor, I'm not sure. I can look into that. However, here he was, the only charges at trial were that he didn't have this FOID card. And in Texas, there's no such FOID card. So he would not be in violation of a law saying. Well, just what you're saying is that he's saying if I was in Texas, I couldn't be convicted of this. Just specifically of the FOID violation. All that we're asking is for him to be treated the same as any Illinois resident who does have a valid FOID. Weren't both charges based on not having a FOID card? Yes. They believe there were originally six charges against him, different versions of the UUW. They now need all of them except for the two FOID right before trial. And one was in the car? Yeah, one was in the car and one was on his purse. Again, those charges had nothing about concealed carry or how you're carrying it. No, but counsel, he didn't have a FOID card. And so the only way your defendant can escape prosecution is if he can show that he fits within an exception. The exception that you invoked to B-10 says if you are licensed by another state. And your argument is twofold. First of all, that includes states that just let you do it without a license. You need to convince us of that to have any traction. But if we even agreed with you on that, you would have to then prove the second step, which is that Texas, in fact, permitted these activities. So there were two activities that he did that he was convicted of. They may have fallen under the same statute, but they're two different things. Certainly under Texas law, they seem to be two different things. One was having a gun in his car, and the other was having his gun outside of the car and by a bar, which I think there might even be some problems with it being by a liquor establishment. But put that aside. One was in the car. One was out. Now, I think what we're questioning you on is under Texas law, you don't seem to need to get a license to have a gun in your car. But you do need a license, a concealed carry license, to have it outside of the car. Am I wrong about that? You do need a license to carry it in a concealed manner. So insofar as he was convicted of count five, which, you know, I'm sorry, yeah, I think count five was the one outside of the car. Aren't you unable to show that he was allowed to do that in Texas? Doesn't that just a fortiori mean that you don't have an argument on that count? But I believe what that is, the essential element of that count was that he did not have a FOIA card. And our position is that Texas, in essence, issued him a registration or permit because it doesn't require and he can carry it outside of the car, but only as it involves the FOIA. I think it is essential that that FOIA, it doesn't matter where he carried it, how he carried it, what he did with the gun, that's one of the elements that he does not have a FOIA card. And they can't prove that here because he did have, in essence, a FOIA card because Texas does not issue a license or permit. And it said, in essence, you may have that firearm. Does it matter for constitutional purposes whether or not what he did outside the car was illegal in Texas? I don't believe so, Your Honor. Well, if he was, if what he did in terms of getting out of the car and going back into the bar with, well, let's say for purposes of arguments that the gun was on his person or concealed, under Texas law, can he do that? I don't know if he can do that under Texas law. Well, if he can't do it under Texas law, let's just assume that. Let's assume he can't do that under Texas law. How do you reach the constitutional claim that you've made? Because he was charged under Illinois laws. Right, but if we find that what he did was a violation of Texas law, it really wouldn't matter, would it, in terms of the FOIA card? I think then that would be an element. If the laws were identical in Texas and if they had that FOIA requirement, they couldn't prove that element because he had a FOIA card in Texas because they don't issue a FOIA card. Well, let's take it further then. Let's assume he doesn't have a FOIA card, that this permit for the base is not. I think then by Texas not requiring a permit or registration, that is in essence giving him permission to have that firearm. I think that is that Meshuggah case, if I'm pronouncing it correctly, out of the Central District of Illinois specifically held that and addressed that issue. Well, we can talk about that. First of all, it's not binding on us. It's a district court decision. But in that case, the judge went through a lot of reasoning and ultimately came to the conclusion that our statute essentially allows any sort of – well, it recognizes that if you live in a state where you don't have to get a license, then this fits into the exception in Illinois. Isn't that kind of what you said? Yes. Well, I mean, does our statute – is that your argument that this statute actually says that somewhere in there that any state that allows someone to carry a gun or have one without a license, that's what our legislature intended? Yes. And why is that? I think because those states otherwise would lead to an absurd result. I think in the Meshuggah case it talks about there's maybe 37 states that don't have registration or license. So I don't believe the Illinois legislature decided we're only going to take a FOID requirement or license or registration from 13 different states and leave out 37 other states. But maybe the Illinois legislature thought in its wisdom that states that don't have any kind of regulation regarding just getting a permit is not beneficial for the residents of our state. And that the idea that you have to go through some process, however limited, because even Texas now has recognized that you can't have a concealed weapon without getting a license, correct? Yes. So, I mean, I don't think the language necessarily, you know, supports this interpretation of the district court. I think that they didn't specify exactly what is the license or registration requirement. So if they only wanted to have it 13 states, they didn't spell out what you have to do. Everyone is still going to be subject to the federal background checks as well. But couldn't they have easily included the language that you're suggesting, that if you're a resident in a state where you're not required to get any kind of license, this is an exception? They could have. Perhaps they never thought about the situation. I think it's an unusual situation. Well, what about subsection B-13, which was something that was discussed in the shotgun? That's a situation where the general assembly did actually use that language. In subsection B-13, they talked about states that do not require licensure and registration. I believe they talked about that. That was kind of an odd situation, too, because if I'm not mistaken, about hunting out-of-state hunters. Yeah. But I think they criticized some of the language that it would be impossible to follow because it wouldn't allow people to clean their guns outside of specific five days. They couldn't get their guns repaired in Illinois. Well, that's just going back to her general argument, the judge's position in the Chaga that it would be absurd. Yeah, the court said it would be absurd to exempt only 12 other states and not those other 37 that don't have any licensure requirement. But as Justice McBride said, what's so absurd about that? What's absurd about the state saying, we're going to look at states that have some official process, maybe it's a real careful vetting process, maybe it's just a registration process that at least makes the person sign up, maybe even sign up their gun, so that there's some way to know that the state has somehow been involved with this person possessing a gun, as opposed to 37 states that are more of kind of wild, wild west, where just anyone can have a gun if they want one. I mean, that may be paternalistic, that may be imprudent, but is it absurd to think the state might have made that distinction in that statute? If they did make that distinction, I think he's going to run into some serious constitutional questions as well, though, because then they're in essence saying anybody from those 37 states has a different right to bear arms in Illinois than other people. Well, doesn't the state have the right to legislate in this particular area? And in looking at Section 9, non-residents whose firearms are unloaded and enclosed in a case, how do you respond to that provision? It basically says anybody, anybody can come into the state with a firearm as long as it's unloaded and enclosed in a case. Can't a state legislate that? They can have reasonable regulations. What is unreasonable about non-residents traveling through the state and asking them simply to make sure that their firearm is unloaded and enclosed? I believe that would infringe upon their right to bear arms. The courts have been clear that you have a Second Amendment right for self-defense purposes in the house and out of the house, and if you have a firearm and it's got to be unloaded in a case. Has anyone so far as to say in the car, anywhere you go, travel? I don't know if they've said specifically in the car, but I don't think that exception is also just limited to a car. Is there anything different about people moving through states in vehicles? Hasn't the United States Supreme Court recognized the significance of a moving vehicle in many decisions? I think they could if they're not staying in the state and they're just passing through. I think that would be one situation as opposed to if they're visiting and going to be here for any length of time. On a facial challenge, do you believe that you can actually argue that facially this is unconstitutional? I think if it doesn't apply to 37 different states, that's a lot of people that have no Second Amendment right then in the state of Illinois. Well, no Second Amendment right? I mean, the statute says 2B10, the one you're invoking, says if you're licensed or registered in another state. In this case, the defendant could have gotten a concealed carry permit in Texas, right? Yes. And had he done that, he would have, I would assume, successfully defended against this prosecution on both counts because he would have said I have a permit, I have a license in another state. And I don't know what the trial court would have done, but I think we would have looked very favorably on that because, I mean, how much more on point can you get with the exception? I believe, but the statute doesn't say you have to have a concealed carry. No, but it says license, that includes possession of a gun. I mean, is there something unconstitutional about the state of Illinois saying we want you to have some license? Right, isn't that really the heart of the statute, is that you can possess, you can carry, but in Illinois you have to have a FOI card. And that's really the statute. Okay, so is there really a facial challenge here that Illinois can't legislate on the FOI card? If they don't have any sort of exception for people that can't get a FOI card. Well, they have numerous exceptions, and one of them is that if you get a FOI card in your own state, it's fine. You're okay. You can travel through, you can keep it in your car with, I mean, even if you don't have a FOI card, as long as it's unloaded and enclosed, if you have a FOI card or something like that, you can come through Illinois and do whatever you want, really, in terms of possessing that gun. I would say that that's beyond a reasonable regulation, though, because there's going to be a whole swath of people that then cannot have a firearm for self-defense in Illinois. They come from states without licensing or registration. They can never fit into Exception 10. Are there states that have no licensing or registration even for concealed carry? That I do not know, Your Honor. I'm not aware of any state that has no license at all for concealed carry. I understand that getting a concealed carry license is going a little over and beyond what you would think of just to have simple possession, but it would have satisfied the statute, right? I mean, someone from Texas could get a concealed carry license and then come here and invoke 2B10. Hypothetically, I would hope so. And isn't that procedure really very simple in Texas? There really isn't any. There aren't any constraints written on an individual. Basically, it's applying, it's paying a fee, and for veterans or military people, the fee is waived. But basically, if you apply and then you have to – is there training required? I believe in Texas there is some training. It is an additional burden that's not laid out in the statute. I don't know of any cases that have required that, and I don't know of any cases even that have said if you've got a concealed carry from another state, Illinois is going to say that satisfies the FOID. As of right now, Illinois doesn't recognize a concealed carry from most states. I think they only recognize five states. Now, that's for someone charged with a concealed carry violation. But I believe that's placing an undue burden on Mr. Wiggins to have to get a concealed carry from Texas. Ultimately – oh, I'm sorry. Hanson, the Illinois Supreme Court already decided that this statute is constitutional. I believe that the Mosley and the other decisions have been dealt with people that were under 21, though. And I believe that could be justified as a reasonable regulation. At some point, she'll no longer be 21. We've had other regulations on people that are under 21. Here, though, Mr. Wiggins would never be able to satisfy that. Well, what we're basically saying here, if Mr. Wiggins had committed the same act in Texas that he did in Illinois, could he have been convicted in Texas? That's essentially what we're looking at, right? He could not be convicted of what he was convicted of here. Of carrying a concealed weapon? Well, I mean, his conduct, though, the conduct of getting out of that truck with the weapon concealed in his jacket, he could be prosecuted under Texas laws for that act. Possibly, and they could charge him with, there could be all kinds of things. And the reason he could be charged with it is because he does not have the registration card, which is the equivalent of a FOIA. I would submit that the... And that's really what we're getting down to. He doesn't have that card. And secondly, we have a question with regard to the possession of the truck. It says you can't be involved in anything except a traffic misdemeanor. In Texas, had he gotten out of that truck with the weapon, he's involved with a crime other than a traffic misdemeanor. Isn't that correct? Potentially. They could charge him with all kinds of things probably in Texas, being at a bar, I don't know if there was any kind of assault, any kind of... But the root of everything, though, is the fact that he did not have the proper documentation. And we call it a different thing here. Down there, we call it, what, the concealed carry permit. But it's really concealed handgun permit, but it's still the same thing. I said that there are two different things, because the concealed carry allows you to carry the gun concealed wherever you want. The FOIA, it's just a system of registration. Why should he legally be allowed to carry a gun in Illinois when he can't legally carry the gun in Texas? I think that in Illinois, they could have charged him with something different. And they did have a... But the basis, the reason is that he didn't have the proper documentation and the training and the registration procedures he didn't go through. But I think that's a different type of registration that is required. Is he allowed to have... When the police recovered the gun, it was under the seat, wasn't it? I believe so. Is that in Texas? Can you have the gun anywhere in your car? I'm not familiar with that state's law. So tell me, can you have a gun hidden in a car? That I don't know. I'd be willing to look into that and submit something. If that's illegal in Texas, then how do we reach the constitutional issue here? Because I think in Texas, they could not charge him with this FOIA violation, the counts two and, I believe, five. That would be impossible for him to be convicted of that. That is the requirement of the card. If you can't have a gun hidden in Texas, and that gun was recovered under the seat, wasn't it? Yes. I think I'm going back to what Justice House was saying, is that if what he did in Texas is unlawful, how would we ever reach the constitutional claim? Because the trial court found him guilty under two separate counts. However, any hypothetical thing he could have been guilty in Texas, however, is not the same as the FOIA violation that he was convicted of in Illinois. There could have been all kinds of other ways to charge him in Illinois with other various crimes. But he could not be convicted in Texas of not having a FOIA card because they don't have a FOIA card, or not having registration. They want to try to convict him of a concealed carry? Well, does the concealed carry in Texas that requires a license expand to a concealed gun in a vehicle? Your Honor, I don't know that. I can vote. If that were the case, if under Texas law, in order to have a gun in your car under a seat, concealed, you have to have this license, does that make a difference in this case? I don't think what Texas has of other laws I don't think makes a difference. If under Texas law, in order to have that gun under the seat and you need this license, all right, in Illinois you always have to have that FOIA card. But if in Texas, for the acts he was found guilty of in the vehicle with the gun, we'll say concealed, hidden under the seat, you also need the Texas concealed carry permit, how would we ever reach the constitutional claim because the court found him guilty of that count? Your Honor, I don't know because I don't know the state of the Texas law. However, they could have charged him in Illinois with just that, having a firearm underneath the seat. Well, what was the charge based on? What was that allegation? That he had a firearm in a vehicle without a FOIA card. That's the critical element without the FOIA card. They can't prove that he didn't have a FOIA card. He can't be convicted of that. But you do believe in Texas, just to have it in the car, like this charge was, you don't need anything. You don't need a permit. You don't need a permit. I don't. I'm not an expert on Texas law. But I don't believe they could charge him with a similar charge here. Maybe they could charge him with not having a concealed carry, but he was not charged with that here in Illinois. Is there, is what you presented, what would we call an affirmative defense? Believe there is some. What is the exception? I believe it could be an affirmative defense. However, I believe we touched upon this in the brief. It's a little bit like getting confused about if it's an affirmative defense or an exception. All right. And what the burden is. Well, if it's an affirmative defense, is his statement that this permit allows him to have it wherever, do you believe that that's actually confident evidence? I do, Your Honor. It was unrebutted. How can he give an opinion about whether this permit allows this? I believe if he was issued the permit, the permit's got his name on it. He's from Texas. He was on the base, and it was unrebutted. But it's a statement. I mean, he's just giving his opinion about what he thinks it is, and it says on it it's a permit for a base. Yes, and his opinion, it could be wrong, but I believe that was up to the state then to either present, to rebut it, or to pass a determination. And I'm sorry, what if it's an exception? Is there any burden on you then? I think the burden is lower, but I think he does. He met the burden. He met that burden. Okay. All right, Mr. Cable, we'll give you some time for rebuttal. Thank you. Thank you very much. Mr. Spalberg. Good morning. Good morning again, Your Honor. May it please the Court, Assistant State's Attorney Alan Spalberg, representing the people of the State of Illinois. And I'd like to begin where the argument descended with Justice McBride's question regarding was, is this an affirmative defense? My understanding is that, yes, of course, it is an affirmative defense in the sense that under Holmes, the requirement that a defendant be allowed to present evidence that he has an out-of-state license or permit which satisfies the goals and purposes of the FOID Act, that he be permitted to do that, is an affirmative defense. In the sense that it is an acknowledgement of the facts of the crime that have occurred, but an explanation as to why criminal liability does not attach. Well, then, hasn't he established his affirmative defense by the testimony that he had a permit and that the permit permitted him to have this gun in Texas? Your Honor, yes, he did present that evidence, and the trial court heard it and made a decision based upon the facts in the presentation that it was not a sufficient showing of an equivalent of an FOID card. So she made a finding. She made a factual finding based upon the testimony. So your argument is that if we look at this as to any rational prior fact, there was sufficient evidence to support the guilty finding. Yes, yes. In regards to that question, that question as to whether or not the evidence that was presented at the trial was sufficient to support the finding that the defendant possessed a firearm outside of his own home while that currently valid FOID card was sufficient based upon the light most favorable to the prosecution. The court, I'm sorry. What about this statute? It basically does not allow residents of how many, 37 states? Doesn't it basically forbid them to come into Illinois even though their own state doesn't require them to have a license? Well, Your Honor, there's two areas that have to be addressed related to that. One is the constitutional aspect under the Second Amendment, and the other is the rules of statutory construction and legislative intent. In terms of the constitutional part, every court that has looked at the Second Amendment over the last 10 years or so where we've had a resurgence of individual rights under the Second Amendment has recognized that these states, each state has a right to have reasonable regulation. There is no national right to carry associated with it. Whether it's the Heller decision, McDonald, Moore v. Madigan, everyone, it is each state has that authority to decide what is a reasonable regulation for its own state. Well, do you think that the legislature really intended to, I don't know if disenfranchise is the right word, but to basically cut out a large portion of the population that come into Illinois when if they're in their own state, they have the absolute right to do what Mr. Wiggins did? Well, Your Honor, thank you. The question of legislative intent, I don't think we can look at it from a 2016 perspective as to what the legislature intended under the FYD Act. That Act was adopted, I believe, in 1967 for the first time. And so the understanding that we should be considering, that this court should be looking to, is what does the legislature intend when they wrote subsection 10 that the non-residents who are currently licensed are registered to possess a firearm in their resident state? At that time, there were very few states, my understanding, that authorized concealed carry. There was, again, there's been a resurgence of Second Amendment rights in firearm ownership over the past 15, 20 years. But at the time the statute was written, the legislature seemingly separated out those residents, those persons who are residents of other states who are actually licensed by or permitted by their state, some sort of official process, from those who are not. Well, why do you say that? Just from the language of the Act? Just the plain language. Those are very definitive terms. We would not say that a license to something is a recognition that you are entitled to do it as opposed to being permitted to do it because it hasn't been prohibited in some particular way. That's what I think is the difference here. The Mishaga case that makes this distinction between licensure and permitting and the absence of oversight is not compelling in my mind. In this case, there is some oversight he's arguing. They said, attached to your brief, you have this Motorist Protection Act, and it says you have a right, affirmatively, you have the right to go from your house to your vehicle and possess it in that vehicle as long as it's not in plain sight. So he's saying, well, as far as count two is concerned, there is some oversight. It's not just that it was overlit. The governor and legislature specifically granted me this right. Yes, and thank you. That was actually the next point I was going to get to is that if counsel is correct that Texas's apparently lack of a formal FOID process that we have is the equivalent of a license, then any conduct that the defendant commits outside the scope of that license is by definition unlicensed. Once you exceed the scope of your license, it is no longer licensed. An example I'd like to offer you is I am a parent of teenagers, and they have very limited restrictions on their driver's license. They can't drive after certain hours, before certain hours, and they are told by our Secretary of State that their license is not valid at that point. They are not driving. It is unlicensed conduct at that point. It would be the same thing here. Any conduct that exceeds the scope of the Texas permit, or whatever it might be, would be by definition unlicensed, what we would call here in Illinois. Why should he be treated differently than Mr. Holmes from Indiana? I don't believe he was treated differently in any way than Mr. Holmes. Mr. Holmes, what the ruling of the Illinois Supreme Court was, is that the trial court erred in categorically prohibiting any demonstration of evidence that what he had from Indiana was an equivalent to what Illinois FOID was. The judge here very carefully permitted the defendant to present it, considered it carefully, considered it carefully at the motion to reconsider. There was no inconsistency between this case and Holmes. The difference, though, however, was seemingly in Holmes, the evidence that the defendant was offering was that he was formally permitted to carry that firearm by the State of Indiana. We have no such evidence here. But isn't there evidence in this record? We don't have to accept, you know, the findings. I mean, unless they're manifestly against the weight, isn't that the standard? Yes, Your Honor. Wasn't there evidence that Mr. Wiggins not only didn't have to get a license for possession of a weapon in Texas, but he actually had a permit from the base. He is a retired veteran, is he not? I don't remember. I mean, is there any question that in Texas there wouldn't be any concerns here in terms of his possessing this gun? And yet he comes into Illinois and he's charged with multiple counts, aggravated unlawful use of a weapon. Your Honor, I obviously am not an expert on Texas law, but from my understanding of what I can see, the conduct that occurred in this case would raise concerns under Texas law because there is a gun being brought into a bar, which I have my understanding, in a concealed manner, which is a violation of Texas law. There is a gun that is being carried. But you dismissed certain charges, did you not? Yes. Well, we had to dismiss those charges. He wasn't charged with concealing a weapon, was he? No, Your Honor. In any shape or form, under either of the two counts? Yes. And obviously, following People v. Aguilar, we dismissed all those counts that were predicated upon the A3A loaded on case immediately accessible because the Illinois Supreme Court had declared those provisions void ab initio. And so we couldn't go forward on those counts. Well, tell me why this isn't an outright ban for any citizen of any state that allows the possession of a weapon without a license. Why isn't this a flat ban, this statute, as far as Mr. Wiggins is concerned? Well, Your Honor, I think I understand your question is why is the statute not facially unconstitutional as far as Mr. Wiggins is concerned? Well, facial unconstitutionality can't be focused solely upon the conduct or the facts of this particular case. And so Mr. Wiggins cannot say it's facially unconstitutional in my case, but it wasn't facially unconstitutional in the Mosley or the Jordan G cases because the facts and the defendants in those cases were different. It's either facially unconstitutional or it's not. And what the Illinois Supreme Court has told us is that the subsection C, the possessing of a firearm outside of your own home while not having a currently valid FOID card is facially constitutional because it is a reasonable regulation under the Second Amendment. So in terms of counsel's argument that the statute here is facially unconstitutional, it's just not. He's just wrong. Any claim that it is unconstitutional as applied is obviously a different argument. It was not one that was made below. But constitutional issues can be raised at any time. Well, I'm not so sure that's true anymore, Your Honor, because I believe what the Illinois Supreme Court has told us is that you cannot raise a claim of unconstitutional as applied unless you have sufficiently presented the facts and evidence below. Now, I recognize here we've had a full trial and there's been a demonstration, and it's possible for this Court, I believe, to reach the issue. But I certainly do not agree that simply alleging an unconstitutional statute can be raised at any time because the Illinois Supreme Court has said otherwise. In this case, the facts are at least argued here. Did he raise this as applied challenge to the trial judge? I don't believe he did. What I believe what he did was he said, I'm entitled to carry this because I have the military permit from Fort Bliss. And then the testimony that he offered, from my recollection of the record, was very unclear because what he did specifically say, as my recollection under cross-examination, is that he admitted that did not authorize him to carry it wherever he went, however he went. And so by definition, he was not saying that what he was doing was licensed or within the scope of whatever the permit was. He made no argument, and counsel recognizes this by saying it was ineffective to not make the argument, but he made no argument that the absence of a Texas permitting law, by definition, is the same as an FOID card. Counsel, if Texas statutes, not a regulatory body that issues a paper license, but if a Texas statute says you may possess a gun in the car, which it does, is that being licensed in another state? Admittedly, that's a much more difficult position for us. I recognize that. As I was reading over the Texas motorist law yesterday, I came across a similar sort of conundrum of my own, that under Texas law, it does seem to be that an individual who is not prohibited from possessing a gun can bring a gun from his home into his car, but cannot take it out of the car. And so it is possible, I'm not enough certain as to how it would be, but it does seem certainly possible or even probable that the possession of a gun in Texas in a car would seem to be permitted in some way. Does that then fit into the definition? I'm sorry, the exception of subsection B-10? Again, I don't think so, because, again, B-10 does talk about being currently licensed or registered. And the way I read those, those are active processes by the state, not simply the absence of a prohibition. I guess that's exactly what I'm trying to, I think the rubber meets the road. There are two different ways you could not have a license. One could be the state says absolutely nothing about it. They don't say you can have a gun. They don't say you can't. They're just utterly silent. That would be passive authorization. There would be no prohibition or no allowance. And I can understand an argument saying that's not being licensed. I can understand, actually, the argument going either way. Meshuggah said that is being licensed. I can understand why it might not be. But here, if we have an affirmative grant of approval from the state, not mere silence, it's not a license. It's not the Department of Safety issuing it or the Department of State Police issuing it. There's no regulatory body issue. But the state says through its General Assembly, yes, you can have a gun in the car. That doesn't count as being licensed? Again, I think the answer to that goes back to the question of what our legislature intended when they passed B-10. Okay. That's a question of legislative intent. But back in 1967, wasn't it permissible in Texas to carry a gun in your car? I'm fairly certain it was. I think their gun laws go back further than 67. I don't know the answer. My reading of the Texas safe motorist law or whatever it might be called, it seemed to indicate that it was the law that exists today is of more recent vintage. I don't know what it might have been before. I mean, I've seen plenty of movies where you have people in Texas driving with the gun racks in the back. I recognize that. But I'm just not familiar enough with Texas law. So you think it's of more recent vintage? I believe that the current incarnation we have is of more recent vintage. Why would it be reasonable to read it the way you want to read it? Why would it be reasonable to say, even if a state actually through statute says, or maybe through a regulation says, okay, we're not going to issue a license, but we're not going to register you, but we're going to blanketly grant you affirmatively the right to have a gun in this circumstance? Why would the Illinois General Assembly have said, no, no, no, we don't want those people? The people who actually have to go through a license requirement, which might just mean you pay $10 and you get a license. Sometimes a licensure requirement isn't careful vetting. Registration requirement probably isn't all that careful vetting. Why would those people, to those people would we say in Illinois, come on in, you're fine. But you guys over here who are following an express state law granting you authority, no, no, you're not okay. Why would the General Assembly have made that distinction? Well, I obviously can't speak to exactly what it would be, but I think if you look at all of the gun laws that we have here in Illinois, both the FOID Act, our more recent Concealed Carry Act, our firearms offenses under Article 24, what they do is they show a comprehensive regulatory scheme. Our legislature from the start has always been concerned about the unsafe transportation of weapons and tried to give clear rules for the law-abiding citizens by which they can lawfully transport them. And the most important distinctions I think are found in the FOID Act comparing subsections 9 to 10. Because what 9 says is that if you are a non-resident and you don't have a license, you can freely bring a gun into our state as long as it's safely transported because it's enclosed in a case and it's unloaded. Yeah, but now we say that you have a right to self-defense outside the home. And haven't the courts said if your gun is broken down, unloaded, encased, that's not going to help you defend yourself too much? Well, that's what the Aguilar Court said before our statute was amended on July 9, 2013. And I admit that the offenses in this case occurred before that. But we still now, we are entitled as a state to prohibit the unlawful possession of a firearm, even if it's loaded, encased, and immediately accessible, by anyone who isn't lawfully and properly permitted under our Concealed Carry Act. That is what the courts have recognized, both the Illinois Appellate Court and the various federal courts have recognized, that our Concealed Carry Act is a sufficient and reasonable regulation to ensure sentimental rights of law-abiding citizens while also at the same time protecting public safety. And so we do still have the ability to prohibit the loaded, encased, and immediately accessible. The problem with the statute before was that it was too overbroad and had no exceptions. But from a legislative intent, what we see is a very broad, pervasive way of ensuring that the guns are not out on the street. They aren't loaded and immediately accessible guns, and that it's restricted in some way. And there is a difference among non-residents between those who are just coming through our state without any particular license and those who are coming to our state who have been, at least in some regard, licensed by their own home state. We can't look into the processes the other states use. We can't make a determination as to whether or not we think that they are sufficient or appropriate at this stage. But we can at least set that minimal level of if you've been given formal approval from your state. So for those reasons and for the reasons stated in our brief, we would ask this Court to affirm the convictions in this case. Thank you. Thank you, Mr. Spilberg. Mr. Gabel. Your Honors, they talk about having some sort of way to check on these non-residents. However, Mr. Wiggins, it would be impossible for him to get any kind of permit or registration from Texas. But he did have this federal permit. He was a military veteran. He served overseas. He was qualified to possess that firearm. That is the whole point of the Floyd Act. Was subsection B-10 limited to licensure or permits from other states? The language does say states. The purpose of it is to see if you're qualified. Here, his state does not issue one. He could not get one. But you're talking about the military permit. I just want to focus on the military permit for a minute. Yes. It's not a state, right? It is not a state. However, I believe under the state's reasoning, then, that would also not apply to people from Washington, D.C., because that's not a state. They could then have no Second Amendment right also in Illinois. However, with Mr. Wiggins, his federal permit does show that he would satisfy the purposes of the Floyd, even though it's a federal permit, not from a state. It does show that somebody found that he was qualified to possess the firearm. The state also talks about the Mosley and Jordan decision that the Supreme Court has upheld the Floyd requirements. However, again, those only dealt with people under 21. Mr. Wiggins was over 21 at the time. Did you do any research in other states regarding this sort of scenario that occurred here? There are obviously many states that allow individuals to possess guns without having to go through a licensure process or registration, and there are many states that have similar laws to our laws. Did you do any research to find out if the court has examined this kind of scenario where an individual from another state didn't require licensure, comes into another state that does require it, and the court found that either the person was or should have been permitted to possess or not? I did extensive research on this, Your Honor, and the Mishaga decision was the only one that I found. Can we talk about this blanket ban? I want to make sure I'm understanding exactly what you're arguing here. There's no equal protection challenge here, right? There's no privileges and immunities challenge? This is just a straight Second Amendment challenge? Yes. If someone is willing to consider those, I would be willing to approve those as well. Okay. I'm not trying to make more work for us here. All right. Under the ADD UUW statute, an individual can, even who's not a resident, can come to someone's home and possess a firearm, can't they? That would not be a violation. Doesn't the AUUW statute now say that if you are in your home or in someone else's home with their permission, you can possess a gun? I believe that's the new statute, yes. So you don't need a FOID card? The FOID card wouldn't apply. Like if your client had been in somebody's house with permission to have the gun, he would not have needed a FOID card, I believe. I don't know if that's how they charged it at trial, though. Well, no, because those weren't the facts. He wasn't at his friend's home with permission. But if he were, doesn't – I'm just trying to get to this blanket. If we interpret this the way you are claiming – actually, the way the state is claiming, and this license or registered in other states only applies to the other 12 states that actually have those requirements and not to the 37 that don't, which is admittedly kind of a restrictive reading. I'm just trying to think of what that would mean for the state if that were the right. It seems to me that an individual can still come into the state, even without a FOID card, and possess a gun. Well, first of all, they could possess a gun in their own home without a FOID card and not be convicted of AUUW. I believe that's what it says. And I think that they could also visit somebody from out of state in Illinois with permission. I'm not certain on the specific state of the law now. I know this is sort of addressed in the Machado decision. Is that why the court held that in the other case the woman didn't have standing? That she could because she was from Ohio, which did not issue the permit. I believe she did say she was – That was a FOID card act. This is an AUUW challenge, right? Yes. But the central element is the FOID requirement. If that FOID requirement weren't there, neither of these charges would stand. But Machado wasn't considering whether AUUW would have been violated in that state. They didn't challenge the constitutionality of AUUW. They challenged the constitutionality of the FOID card act. Yes, and I believe she was concerned about being arrested and charged. I don't know if it was the FOID or the act. It was FOID. And she did say she was going to stay at her friend's house. Sure. Yes. Sure. However, the Supreme Court of Illinois has said that the right to bear arms does apply outside of the house as well. Thank you, Your Honor. Okay. Thank you, Mr. Gabel. Thank you both. This was a very interesting case, a very important case. It was well-argued, well-briefed. We'll take it under advisement and stand adjourned for the moment.